

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed January 27, 2010　　　　　　　　　　　　　　　　　　**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 03-40428 |
| RALPH OWENS TRUCKING CO., INC., | § | |
| | § | CHAPTER 7 |
| DEBTOR. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | ADVERSARY NO. 09-04215 |
| PLAINTIFF, | § | |
| | § | |
| V. | § | |
| | § | |
| RALPH OWENS TRUCKING CO., INC., | § | |
| | § | |
| DEFENDANT. | § | |

**MEMORANDUM ORDER**

Before the court is the *Motion for §506(c) Surcharge Against Overpayment to the Internal Revenue Service* (the "Motion"), filed in the above-styled adversary proceeding by Shawn K. Brown, Chapter 7 Trustee (the "Trustee") for Ralph Owens Trucking Co., Inc. ("Debtor"). The court conducted a hearing on the Motion on December 3, 2009 (the

1

"Hearing"), at which the court heard testimony from the Trustee. Each party has also submitted a brief to the court, and the parties have agreed to a partial stipulation of facts.

This matter is subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). This memorandum order embodies the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

## Background

Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Code")[1] on January 8, 2003. The case was converted to a chapter 7 case on February 17, 2004, at which time the Trustee was appointed. The Trustee then moved to employ Whitley Penn and Associates ("Whitley Penn") as the bankruptcy estate's accountant and financial advisor, and the court authorized such employment by an order entered on July 23, 2004.

In late 2004, the Trustee filed amended Form 1120X returns, prepared by Whitley Penn, for the years 1996, 1997, 1998, 1999, 2000, and 2001, showing corporate income tax overpayments totaling $118,292, and on February 28, 2005, the Trustee filed the year 2002 Form 1120 showing an overpayment of $22,368. These overpayments, together, equal $140,660. Instead of refunding these overpayments, the IRS offset them against other of Debtor's tax liabilities pursuant to the IRS's setoff rights under section 6402(a) of the Internal Revenue Code.[2] 28 U.S.C. § 6402(a).

---

[1] 11 U.S.C. §§ 101 *et seq.*

[2] According to the parties' partial stipulation of facts, the parties cannot verify that the amended 2001 return, representing an overpayment of $32,045, was processed and the overpayment offset. This means that the amount confirmed to have been offset is actually $108,615. The IRS has, however, ordered the original 2001 amended return to resolve this matter.

2

On May 14, 2009, the Trustee commenced this adversary proceeding to avoid setoff by the IRS of the overpayments, alleging that the IRS had offset the overpayments against Debtor's tax liabilities without first seeking relief from the automatic stay. On August 18, 2009, the court entered an agreed order in the underlying bankruptcy case granting the IRS's motion for relief from the automatic stay, *nunc pro tunc*, authorizing the IRS to offset the tax overpayments against Debtor's other tax liabilities. The only matter left unresolved in the adversary is the Motion.

### Discussion

A creditor with an allowed claim that is subject to setoff is considered to have a secured claim to the extent of the amount subject to setoff. 11 U.S.C. § 506(a). Thus, before the IRS offset the overpayments, it had a secured claim in the amount of $140,660, the total amount of the overpayments.

By the Motion, the Trustee seeks to recover from those overpayments certain expenses incurred in compiling and filing the tax returns that established the overpayments.[3] Section 506(c) of the Code states:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

11 U.S.C. § 506(c).

---

[3] First, the Trustee seeks to recover $13,765.75 in fees incurred by Whitley Penn in preparing the amended tax returns that discovered the overpayments. Second, the Trustee seeks to recover $7033.00 in statutory compensation for himself.

3

The court is bound to give effect to a statute's plain meaning, unless doing so would produce an absurd result.[4] Section 506(c) is an exception to the general rule that administrative expenses are payable from unencumbered property of the estate, rather than from secured creditors' collateral. *Borrego Springs Bank, N.A. v. Skuna River Lumber, L.L.C. (In re Skuna River Lumber, LLC)*, 564 F.3d 353 (5th Cir. 2009). Because it is an exception to the general rule, section 506(c) should be construed narrowly. *In re Cascade Hydraulics & Utility Service, Inc.*, 815 F.2d 546 (9th Cir. 1987); *In re J.R. Research, Inc.*, 65 B.R. 747 (Bankr. D. Utah 1986); *In re New England Carpet Co.*, 28 B.R. 766 (Bankr. D. Vt. 1983).

According to the plain meaning of section 506(c), the trustee may only recover the "reasonable, necessary costs and expenses of *preserving*, or *disposing of*," the collateral. 11 U.S.C. § 506(c) (emphasis added). Typically, a trustee invoking section 506(c) does so to obtain reimbursement for insurance, maintenance, or security costs, or the costs of sale of the creditor's collateral. Those sorts of expenses clearly involve preservation or disposition of the collateral. They are expenses the creditor would have to incur to prevent the loss of value or to realize on its collateral.

In this case, the trustee did not incur the accounting expenses, nor his own fees, in preserving or disposing of the overpayments. He incurred them in discovering and

---

[4] *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 157 L. Ed. 2d 1024, 1033-34, 124 S. Ct. 1023, 1030 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required is not absurd—is to enforce it according to its terms.'") (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 147 L. Ed. 2d 1, 120 S. Ct. 1942 (2000)). *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'") (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982); *U.S. v. Osborne*, 262 F.3d 486, 490 (5th Cir. 2001) ("We give effect to plain, unambiguous language, unless a literal interpretation would produce an irrational result.").

establishing the overpayments. Under an appropriately restrictive reading of the statute's plain meaning, discovering and establishing collateral does not amount to preserving it or disposing of it.[5] The Trustee has cited to the court no authority in support of recovery under section 506(c) in this sort of situation.

Furthermore, the Fifth Circuit Court of Appeals has recognized five elements that must be satisfied for a trustee to recover expenses under section 506(c): (1) the expenditures must have been necessary; (2) the amounts expended must have been reasonable; (3) the creditor must have benefitted from the expenditures; (4) the expenses must have been incurred primarily for the benefit of the secured creditor; and (5) the expenditures must have resulted in a quantifiable, direct benefit to the secured creditor. *PSI, Inc. of Missouri v. Aguillard (In re Senior—G & A Operating Co., Inc.)*, 957 F.2d 1290, 1298-99 (5th Cir. 1992).

Even assuming that, by incurring expenses to discover the collateral of the IRS, the expenses were incurred to preserve or dispose of it, the Trustee is unable to satisfy three of these elements. First, the expenditures were not *necessary* to discover the collateral. The IRS might have discovered the overpayments itself, through an audit. Although Whitley Penn's efforts certainly facilitated discovery of the overpayments, the overpayments existed either way, and they could have been discovered without Whitley Penn's help. Second, the expenses were not incurred *primarily for the benefit* of the IRS. The Trustee testified at the Hearing that he hired Whitley Penn because Debtor had a history of not paying payroll taxes and because Debtor's records were in poor condition.

---

[5] "Preserve" means "to keep safe from injury, harm, or destruction," or "to keep alive, intact, or free from decay," and its synonyms are "protect" and "maintain." MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.m-w.com. "Dispose of" means "to place, distribute, or arrange especially in an orderly way," and "to transfer to the control of another." *Id.*

The Trustee also testified that he had been alerted that amending previous returns might produce refunds for the estate. Making expenditures to obtain tax refunds on behalf of the estate does not amount to incurring those expenses primarily for the benefit of one creditor, in this case the IRS.

Third, the overpayments do not directly benefit the IRS. Had the overpayments not been discovered, the IRS would have been no worse off. While its claim would have been larger, it would not have had to recognize the liability represented by the refunds. As noted above, section 506(c) was intended to reimburse an estate for expenses that a secured creditor would have itself had to incur if the estate did not pay them. It can hardly be said that the IRS would have found it necessary to incur the expenses here at issue. 4 COLLIER ON BANKRUPTCY ¶ 506.05 (16th ed. 2009).

To adopt the reasoning of the Trustee would lead to an absurd result. As any valid counterclaim will be offset against the claim which it counters, by the Trustee's reasoning, the party asserting the claim should be charged under section 506(c) the costs and expenses of discovering and asserting the counterclaim. Put another way, under the Trustee's view of the law, any creditor whose claim is subject to some sort of offset would have to pay for the privilege of having its claim reduced to its apparent dtriment. So interpreting section 506(c) is clearly absurd.

## Conclusion

The Trustee seeks to surcharge overpayments to the IRS under section 506(c) of the code for the expenses he incurred in discovering those overpayments. Those expenses, however, were not incurred to preserve or dispose of the overpayments, and

even if they were, they were not necessary to do so, nor were they incurred primarily for the benefit of the IRS. Accordingly, the Motion is hereby DENIED.

It is so ORDERED.

### END OF MEMORANDUM ORDER ###